UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 04-D-0587-WYD-PAC

JAN L. ROSS,

      Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

      Defendant.

_____

**ORDER**

_____

I.      <u>INTRODUCTION</u>

THIS MATTER is before the Court on a review of the Commissioner's decision that denied Plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 401-433, 1381-1383f. Plaintiff's applications filed December 8, 2000 (Transcript ["Tr."] at 112-14, 672-77) were denied on initial determination (*id.* at 93-97, 678-83). Plaintiff then requested a hearing (*id.* 98). After a hearing on July 17, 2002 (*id.* at 36-92), Administrative Law Judge ["ALJ"] Patrick B. Augustine issued an unfavorable decision on October 17, 2002, finding that Plaintiff was not disabled. *Id.* at 32-34.

In the decision, the ALJ found at steps two and three of the five-step sequential analysis required by law that Plaintiff has severe impairments that do not meet or equal the Listings; namely,

> hemochromatosis; antiphospholipid syndrome; lumbar degenerative disc disease, status post microdiscectomy at L5-S1; cervical degenerative disc disease with herniated nucleus pulposus at C5-6, with upper extremity radiculopathy; status post myocardial infarction, with normal coronary arteries on cardiac catheterization; history of attention deficit hyperactivity disorder, status unknown, possibly resolved; adjustment disorder with mixed emotional features, chronic, due to unemployment, chronic pain, and so on; and pain disorder.

Tr. at 28-29, 33 (Finding 3).  While evidence in the record indicated that Plaintiff was treated for acute pleurisy in May,1996 (reportedly caused by exposure to printing process chemicals), the ALJ found that this did not constitute a severe impairment. *Id.* at 29.  Nonetheless, the ALJ found it reasonable to restrict Plaintiff to a work environment without exposure to extensive concentration of fumes, chemicals, and/or cleaning solvents.  *Id.*  Finally, the ALJ was unable to find that Plaintiff's complaints of headaches secondary to neck pain were medically determinable impairments as "there is no documentation of this alleged problem in the medical records."  *Id.*

Proceeding to step three, the ALJ found that although Plaintiff had severe impairments, those impairments or combination of impairments did not meet or equal a listed impairment.  Tr. at 29.  This finding was based on the fact that "none of the treating or examining physicians of record has reported any of the necessary clinical, laboratory, or radiographic findings" required by the Listings.  *Id.*  The ALJ noted in making this finding that he "specifically considered Sections 1.00 ff., 3.00 ff., 4.00 ff., and 12.00 ff., concerning musculoskeletal, respiratory, cardiovascular, and mental disorders, respectively.  *Id.*

-2-

The ALJ then proceeded to evaluate Plaintiff's residual functional capacity ["RFC"]. Tr. at 29-31. He found that Plaintiff could perform sedentary to light work with certain restrictions. *Id.* at 31. These restrictions were: "postural shifts permitted, and with occasional bending, squatting, kneeling, climbing, and reaching below shoulder level; no overhead reaching; and no exposure to extensive concentrations of fumes, chemicals, and cleaning solvents." *Id.* The ALJ also found that Plaintiff "has the ability to understand, remember, and carry out detailed instructions under general supervision, with no production work, and moderate restrictions in dealing with work-related pressures and changes in the job routine." *Id.* He stated that this was "consistent with the mental [RFC[ assessment made by the State agency psychiatrist . . . ." *Id.*

In making the RFC determination, the ALJ stated that he "carefully considered the effects of the claimant's alleged pain in accordance with the criteria set forth in the regulations." Tr. at 29. He found as to pain that Plaintiff was "generally credible but not fully persuasive in establishing pain and limitations that would prevent him from working." *Id.* at 30. This is because "[t]he medical evidence demonstrates that the claimant obtains reasonable pain control with narcotic pain medication . . . and that he is able to tolerate this medication well." *Id.* Further, "the treating and examining physicians have established that the claimant has sufficient strength to perform some work, albeit not the type of work that the claimant is used to doing . . . . " *Id.* at 31.

Thus, he found that "the claimant has pain resulting in limitations, but not of the frequency, intensity, or persistence to preclude all work activity." *Id*.

At step four, the ALJ found that Plaintiff could not perform his past relevant work as a commercial cleaner, bagger, counter supply worker, stacker/jogger, material handler, press operator, shipping order clerk, industrial maintenance repair person, construction worker II, or landscape gardener. *Id*. at 31-33. This finding was based on the fact that the exertional requirements of his past relevant work as described in the *Dictionary of Occupational Titles* exceeded his restrictions. *Id*.

The ALJ then proceeded to step five, where he considered Plaintiff's age (41 years old at the time of the decision, constituting a "younger individual age 18-44" within the meaning of the regulations), education (some college), and RFC. Tr. at 32. The ALJ stated that if Plaintiff were able to perform the full range of sedentary and light work, the regulations would direct a finding that Plaintiff is not disabled. However, since the ALJ found that Plaintiff's impairments reduce the range of sedentary and light work that Plaintiff can perform, he employed a vocational expert ["VE"] to testify about what jobs a person with Plaintiff's RFC and vocational profile could do.

The VE testified that a hypothetical person with the age, RFC and vocational profile identical to that of Plaintiff was capable of making a vocational adjustment to work as a cafeteria attendant with 105,000 jobs nationally and 2,200 regionally, fast food worker with 93,600 jobs nationally and 17,600 jobs regionally (reflecting a 20% reduction in the job base to accommodate Plaintiff's specific limitations), cashier II

with 832,000 jobs nationally and 12,300 jobs regionally, charge account clerk with

15,000 jobs nationally and 800 jobs regionally, and food and beverage order clerk

with 591,400 jobs nationally and 8,900 regionally. Tr. at 32.  The ALJ concluded that

the VE's testimony was credible, and that there were a significant number of jobs in

the national economy which Plaintiff is capable of performing.  *Id.*  He thus found that

Plaintiff is "not disabled" within the meaning of the Social Security Act.  *Id.*

     The Appeals Council declined review of the ALJ's determination (Tr. at 7-9),

making the case final for judicial review.  This Court has jurisdiction to review the

decision pursuant to 42 U.S.C. § 405(g).

II.    ANALYSIS

    A.    Standard of Review

     A Court's review of a finding that Plaintiff is not disabled is limited to

determining whether the Commissioner applied the correct legal standard and

whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health*

*and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is

evidence a reasonable mind would accept as adequate to support a conclusion.

*Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  It requires more than a

scintilla of evidence but less than a preponderance of the evidence.  *Gossett v.*

*Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).  "Evidence is not substantial if it is

overwhelmed by other evidence in the record or constitutes mere conclusion."

*Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

B.     Analysis of Plaintiff's Arguments

1.     Whether the ALJ Failed to Apply the Correct Legal Test in His Assessment of Plaintiff's Work.

Plaintiff argues that the ALJ failed to apply the correct legal test when he found that Plaintiff's gross receipts showed that he performed a "fairly significant amount of work," in spite of finding that Plaintiff did not engage in substantial gainful activity ["SGA"]. Plaintiff's Brief ("Pl. Br.") at 1; *see also* Tr. at 24. Plaintiff further argues that the ALJ's statement "is not supported by the substantial evidence" and that this affected the RFC evaluation. I find that this issue is immaterial to the ALJ's overall findings.

Although the ALJ found, based on Plaintiff's gross receipts, that "it would appear that he has performed a fairly significant amount of work during the period of time he alleges disability[,]" (Tr. at 24), the ALJ concluded that Plaintiff's work was *not* SGA. *Id.* at 24, 33. While the ALJ went on to state that Plaintiff's work efforts "may demonstrate that he is able to do more than he actually did" and that Plaintiff's "work . . . may indicate that he has the ability to perform [SGA]" (*id.*), this discussion was immaterial to the ALJ's ultimate RFC determination or his conclusions as to Plaintiff.

In other words, there is no evidence in the record that these findings bore any legal significance to the ALJ's determinations, including the evaluation of Plaintiff's RFC. Consequently, even if the ALJ failed to apply the correct legal test in his assessment of Plaintiff's work, it is harmless error since that assessment had no bearing on the RFC determination or the ALJ's ultimate findings.

2.    <u>Whether the ALJ Erred in Finding that Plaintiff's Impairments Do Not Equal a Listing</u>

Plaintiff argues that the ALJ should have explained why his cervical herniated disc condition did not equal a Listing. He asserts in that regard that since he "was diagnosed with and the ALJ found that [he] had pain disorder, and there was evidence of loss of strength of the LUE [left upper extremity], loss of sensation and loss of motion[,]" then the ALJ should have explained why his condition did not equal a Listing at Pt. 404, Subpt. P, App. 1, § 1.04(A). Pl. Br. at 2-3 (citations omitted). I agree.

"At step three, the ALJ determines whether [Plaintiff's] impairment 'is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity.'" *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). As explained by the Tenth Circuit in *Clifton*:

> [t]he Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision . . . which involves a determination of disability and which is in whole or in part unfavorable to [an] individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the

Commissioner's determination and the reason or reasons upon which
it is based. 42 U.S.C. § 405(b)(1).  Under this statute, the ALJ was
required to discuss the evidence and explain why he found that
appellant was not disabled at step three.

*Id.*

In this case, the ALJ appeared to conduct a proper analysis as to whether

Plaintiff's mental impairments met the Listings.  Tr. at 27.  In that regard, the ALJ

discussed the evidence and gave specific reasons why the medical evidence did not

meet the Listings.  *Id.*  As to Plaintiff's physical impairments, however, I find the

analysis to be lacking sufficient detail and not supported by substantial evidence.

More specifically, while the ALJ did discuss medical evidence before reaching

his step three decision (*id.* at 25-29), he concluded that "the claimant does not have

an impairment or combination of impairments which meets the criteria of any of the

listed impairments because none of the treating or examining physicians of record

has reported any of the necessary clinical, laboratory, or radiographic findings

specified therein."  *Id.* at 29.  The evidence does, however, have findings specified in

at least one of the Listings; namely, Disorders of the Spine (Listing 1.04(A)).  Indeed,

the ALJ himself found that Plaintiff had a severe impairment of herniated nucleus

pulposus (*id.* at 28), which falls within Listing 1.04(A).  The ALJ did not, however,

discuss why the medical evidence as to this disorder of the spine did not meet the

specifics of the Listings.  Without such a discussion, the Court is not able to

determine whether the ALJ's conclusions at step three are supported by substantial evidence.

In short, the ALJ ignored the medical evidence of these impairments in discussing the Listings and failed to conduct an analysis as to why the documented impairments do not meet the criteria of the Listings.  Consequently, I find that the case must be remanded for further fact finding on this issue.  The ALJ si directed upon remand to set out his specific findings as to why the medical evidence does or does not meet the Listings, and his reasons for accepting or rejecting the medical evidence at that step.  *See Clifton*, 79 F.3d at 1010.

        3.      <u>Whether the ALJ Failed to Give Proper Weight to Dr. Tyler's Opinion in Assessing Plaintiff's RFC</u>

Plaintiff argues that "the ALJ had to give Dr. Tyler's opinion controlling weight if it was well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the case record." Pl. Br. at 3.  Plaintiff also argues that even if the ALJ decided to not give controlling weight to the opinion of Dr. Tyler, he failed to weigh Dr. Tyler's opinion using all of the factors in 20 C.F.R. § 404.1527(d)(2).

"An ALJ is required to give 'controlling weight' to a treating source's opinion, so long as it is 'well-supported' and 'is not inconsistent with the other substantive evidence in [the] record[;] [w]hen a treating [source's] opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other [source's] reports to

-9-

see if they outweigh the treating [source's] report, not the other way around." *Valdez v. Barnhart*, 62 Fed. Appx. 838, 2003 WL 366751 at 2 (10th Cir. 2003) (quoting *Goatcher v. United States Dept. of Health & Human Svcs.*, 52 F.3d 288, 289-90 (10th Cir. 1994)) (citations omitted).  In addition, the ALJ must consider specific factors to ascertain the appropriate weight to attribute to any medical opinion.  *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988).  These factors include, but are not limited to: length of the treatment relationship, nature and extent of the treatment relationship, and consistency between opinion and the record as a whole.  *Id.*  Finally, "[t]he ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled."  *Goatcher*, 52 F.3d at 290.

Here, the ALJ found that the restrictions noted by Dr. Tyler as to Plaintiff were "supported by the objective medical evidence upon which they are based."  Tr. at 26.  However, he chose to accord Dr. Tyler's opinion only "some weight" because "the claimant has undergone additional treatment since that time, with significant changes in examination findings."  *Id.*

I find that a remand is proper because the ALJ's conclusions as to Dr. Tyler are not specific enough for the Court to find that a proper weighing was conducted.  First, the ALJ's statement that he gave "some weight" to Dr. Tyler's opinion does not explain in what way the ALJ gave weight to the opinion or what specific findings of Dr. Tyler that he gave weight to.  The RFC does not explain this either.  It is simply not possible to tell from the RFC what weight, if any, the ALJ gave Dr. Tyler's opinion.

Second, the ALJ's finding that Plaintiff underwent additional treatment and had significant changes in examination findings after Dr. Tyler issued his opinion is also not explained in any way.  The ALJ did not state what later treatment Plaintiff underwent or what "significant changes in examination findings" were relied on by him.  The ALJ did not point to any later treatment or examination findings made by Dr. Tyler.  The only medical evidence regarding Plaintiff's physical impairment after Dr. Tyler's December 2001 opinion that was discussed in the ALJ's decision were consultative examinations that do not involve "treatment."  Finally, I am unable to determine whether the ALJ applied the relevant factors in weighing Dr. Tyler's opinion. Accordingly, I find that a remand is proper so that the ALJ can reweigh Dr. Tyler's opinion using all the relevant criteria and issue a decision as to the weight to be given Dr. Tyler's opinion that is specific and based on substantial evidence.

4.     Whether the ALJ Improperly Weighed the other Medical Evidence and/or Otherwise Erred in Assessing Plaintiff's RFC

Plaintiff also argues, and I agree, that the ALJ erred in finding that Plaintiff's headaches were not a medically determinable impairment because "there is no documentation of this alleged problem in the medical records."  There is support in the medical evidence that Plaintiff suffered from headaches.  *See* Tr. at 279, 297-304, 443, 455, 480, 482, 492, 631-34.  Accordingly, I find that a remand is also proper on this ground.

Plaintiff also lists other impairments and evidence that was not considered by the ALJ. Upon remand, the ALJ is directed to consider all the impairments of Plaintiff, even if they are not severe. *See Spicer v. Barnhart*, 64 Fed. Appx. 173, 175-76 (10th Cir. 2003) ("[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe', and the "assessment must include a narrative discussion describing how the evidence supports each conclusion . . . . ") (quotation omitted).[1] The ALJ is also directed to consider the impairments in combination. *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).

5.  Whether the ALJ Improperly Assessed Plaintiff's Pain and/or Relied on a Faulty Hypothetical

Finally, Plaintiff argues that the ALJ did not adequately consider his allegations of disabling pain and that the hypothetical was faulty in that it did not include reference to Plaintiff's pain and/or did not include all of Plaintiff's impairments. I find that a remand is also proper on this ground. First, the ALJ did accept the fact that Plaintiff suffered from pain, as evidenced by the fact that he found severe impairments including a pain disorder and an adjustment disorder due in part to chronic pain. Tr. at 29. He further found in his credibility determination that Plaintiff "has pain resulting in limitations." *Id.* at 31. The ALJ concluded, however, that the pain was not "of the

---

[1] While this is unpublished, I find that this opinion as well as other unpublished opinions cited in this Order have persuasive value with respect to a material issue that has not been addressed in a published opinion and/or will assist the Court in its disposition. 10TH CIR. R. 36.3(B).

frequency, intensity, or persistence to preclude all work activity." *Id.* I find that this is not supported by substantial evidence.

First, the fact that pain medication helped Plaintiff (Tr. at 30) does not mean that it controlled or eliminated the pain, and the ALJ has cited to nothing in the record that supports this conclusion. Indeed, as noted by Plaintiff in his briefs, the record seems replete with medical evidence of Plaintiff's ongoing pain even with medication. Second, the fact that the medical practitioners found that Plaintiff could do some work (*id.* at 32) does not mean that they considered the impact of pain or the medication Plaintiff was taking for pain on the ability of Plaintiff to perform work. That was an analysis that needed to be conducted by the ALJ. In other words, the ALJ should have addressed the level of pain that Plaintiff had as well as the extent to which the pain is disabling and/or affects Plaintiff's impairments and his RFC. *See Adkins v. Barnhart*, 80 Fed. Appx. 44, 91 Soc.Sec.Rep.Serv. 252 (10th Cir. 2003).

The ALJ also erred in not including pain in the hypothetical question given to the VE. *See Harrison v. Shalala*, No. 93-5238, 1994 WL 266742 (10th Cir. 1994) ("[i]f the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry . . . [t]he [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [he] suffers.*'" *Id.,* 1994 WL 266742 at *5 (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993) (further quotations omitted). "A vocational expert is ordinarily required to determine what limitation . . . pain might impose on [Plaintiff's] ability to do . . . work." *Id.* Upon

remand, the ALJ is also directed to consider all of Plaintiff's impairments in the hypothetical question.[2]

III.   <u>CONCLUSION</u>

Based upon the errors described above, I find that this case must be reversed and remanded for further fact finding consistent with this Order.

Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner pursuant to 42 U.S.C. § 405(g) to make further findings consistent with this Order.

Dated September 27, 2005

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge

---

[2] For example, Plaintiff states that the ALJ relied on the consultative examination of Dr. Pedowicz, a psychiatrist, but did not adopt all the restrictions noted therein, including a restriction on limited interpersonal interaction.  Plaintiff also asserts that the ALJ mischaracterized Dr. Ricci's opinion and ignored Dr. Ingram's assessment that Plaintiff's pain disorder posed problems, if not absolute barriers, to Plaintiff's ability to return to work.